**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CURTIS BOYD,<br><br>      Plaintiff,<br><br>    v.<br><br>C. ETCHEBEHERE, et.al.<br><br>      Defendants. | Case No. 1:13-01966-LJO-SAB (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL AND GRANTING DEFENDANTS' REQUEST FOR REASONABLE EXPENSES, BUT STAYING ENFORCEMENT OF FEES, AND DENYING, WITHOUT PREJUDICE DEFENDANTS' REQUEST FOR PROTECTIVE ORDER<br><br>[ECF No. 75] |

Plaintiff Curtis Boyd is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's motion to compel, filed October 14, 2016.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Etchebehere, J. Ojeda, F. Cole, J. Gallagher, B. Odle, D. Perkins, D. Hetebrink, and R. Guembe for violation of Plaintiff's rights to free exercise of his religion.

On December 22, 2015, Plaintiff filed a motion to compel. On January 5, 2016, Defendant filed a partial-opposition to Plaintiff's motion to compel. (ECF No. 58.) Plaintiff filed a reply on January 27, 2016. (ECF No. 59.) Pursuant to court order, Defendant filed a sur-reply on February 11, 2016. (ECF No. 61.)

1  On March 3, 2016, the Court denied Plaintiff's motion to compel. (ECF No. 65.)

2  On March 25, 2016, Defendants filed an answer to the first amended complaint, and on March 30, 2016, the Court issued the discovery and scheduling order, directing that completion of all discovery must be done by November 30, 2016.

As previously stated, on October 14, 2016, Plaintiff filed a second motion to compel and request for sanctions. After receiving an extension of time, Defendants filed an opposition on December 8, 2016. Plaintiff did not file a reply, and the motion is deemed submitted for review without oral argument. Local Rule 230(*l*).

## II.

## DISCUSSION

### A.  Legal Standard

Plaintiff is proceeding pro se and he is a state prisoner challenging his conditions of confinement. As a result, the parties were relieved of some of the requirements which would otherwise apply, including initial disclosure and the need to meet and confer in good faith prior to involving the Court in a discovery dispute. Fed. R. Civ. P. 26(a)(1); Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 37(a)(1); Local Rules 240, 251; ECF No. 67, Discovery and Scheduling Order, ¶4. Further, where otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur. See Fed. R. Civ. P. 26(c); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984) (privacy rights or interests implicit in broad purpose and language of Rule 26(c)); Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana, 408 F.3d 1142, 1149 (9th Cir. 2005) (discussing assertion of privilege); Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (recognizing a constitutionally-based right of privacy that can be raised in discovery); see also Garcia v. Clark, No. 1:10-CV-00447-LJO-DLB PC, 2012 WL 1232315, at \*6 n.5 (E.D. Cal. Apr. 12, 2012) (noting inmate's entitlement to inspect discoverable information may be accommodated in ways which mitigate institutional safety concerns); Robinson v. Adams, No. 1:08-cv-01380-AWI-BAM PC, 2012 WL 912746, at \*2-3 (E.D. Cal. Mar. 16, 2012) (issuing protective order regarding documents containing information which implicated the safety and

security of the prison); Orr v. Hernandez, No. CV-08-0472-JLQ, 2012 WL 761355, at *1-2 (E.D. Cal. Mar. 7, 2012) (addressing requests for protective order and for redaction of information asserted to risk jeopardizing safety and security of inmates or the institution if released); Womack v. Virga, No. CIV S-11-1030 MCE EFB P, 2011 WL 6703958, at *5-6 (E.D. Cal. Dec. 21, 2011) (requiring defendants to submit withheld documents for in camera review or move for a protective order).

However, this is a civil action to which the Federal Rules of Civil Procedure apply. The discovery process is subject to the overriding limitation of good faith, and callous disregard of discovery responsibilities cannot be condoned. Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1246 (9th Cir. 1981) (quotation marks and citation omitted). Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and for good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1) (quotation marks omitted). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* (quotation marks omitted).

Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified. Grabek v. Dickinson, No. CIV S-10-2892 GGH P, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); Womack, 2011 WL 6703958, at *3; Mitchell v. Felker, No. CV 08-119RAJ, 2010 WL 3835765, at *2 (E.D. Cal. Sep. 29, 2010); Ellis v. Cambra, No. 1:02-cv-05646-AWI-SMS PC, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). This requires the moving party to inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious. Grabek, 2012 WL 113799, at *1; Womack, 2011 WL 6703958, at *3; Mitchell, 2010 WL 3835765, at *2; Ellis, 2008 WL 860523, at *4. However, the Court is vested with broad discretion to manage discovery and notwithstanding these procedures, Plaintiff is entitled to leniency as a pro se litigant; therefore, to the extent possible, the Court endeavors to resolve his motion to compel on its merits. Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012); Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005); Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

### B. Plaintiff's First Motion to Compel

In his first motion to compel, filed on December 22, 2015, Plaintiff moved: (1) to compel production of Supplemental Request for Production of Documents; (2) to compel a response to Request for Admission No. 5; and (3) for an award of sanctions. (ECF No. 55, Mot. at 1.) The Court denied Plaintiff's motion to compel based on Defendants responses and/or supplemental responses to Plaintiff's requests. (ECF No. 65.)

The following background is taken from the Court's March 3, 2016, order denying Plaintiff's first motion to compel:

> In his Notice for Production of Documents, served September 16, 2015, Plaintiff requested all documents regarding observance of Ramadan at Substance Abuse Treatment Facility (SATF) from 2006 through 2012. (ECF No. 59, Decl. of A. Whisnand, ECF No. 58, Ex. A.) Defense counsel contacted SATF's litigation coordinator and asked for all documents relating to Ramadan at SATF from 2006 to 2012. (Decl. of A. Whisnand, ¶ 4.) On October 16, 2015, defense counsel served "Defendant's Responses to Plaintiff's First Request for Production of Documents," which counsel submits included all of the responsive documents that SATF had located. (Id. ¶¶ 4-5; see also Ex. C [ECF Nos. 58-1 at 16-53 and 58-2 at 1-2].)
>
> On October 26, 2015, Plaintiff requested: (1) "legible copies of all com[m]ittee meeting in the years 2010, 2011, and 2012 minutes at [SATF], regarding creation and implementing the respective RAMADAN FASTING programs …," and (2) "[a] copy of the administrative com[m]ittee rules for order of business, proposing and adopting of inmate activity programs." (ECF No. 59, Decl. of A. Whisnand, ¶¶ 8-10; ECF No. 58, Ex. F.) On November 20, 2015, Defendant objected to the Supplemental Request for Production of Documents on the grounds that the request was "vague and ambiguous as to 'administrative committee rules' and 'inmate activity programs.'" (Decl. of A. Whisnand, ¶ 13; Ex. H, AJW.093.) Plaintiff also indicated that some of the documents provided were "faded and "NOT LEGIBLE." (Id.)
>
> On November 17, 2015, defense counsel informed Plaintiff that he would attempt to darken the faded documents. (Decl. of A. Whisnand, ¶ 11.) That same day, defense counsel submits that he contacted SATF's litigation coordinator and asked whether he could either produce the original documents or provide darker copies. (ECF No. 61-1, Second Decl. of A. Whisnand, ¶ 3; see also Decl. of A. Whisnand Ex. G (ECF No. 58-2 at 42].) The litigation coordinator informed counsel that SATF no longer possessed the originals, and the electronic, scanned copies were poor quality. (Second Decl. of A. Whisnand, ¶ 4; see also Decl. of A. Whisnand, Ex. G.) Defense counsel submits that he coordinated with his office staff to darken the documents Defendant had previously produced. (Second Decl. of A. Whisnand, ¶¶ 2-5.) On November 20, 2015, defense counsel informed Plaintiff that SATF no longer possessed the original documents and only maintained poor copies. (Decl. A. Whisnand, Ex. G.) Defense counsel also informed Plaintiff that his staff and SATF staff had created darkened copies of the documents, which counsel enclosed with the letter. (Second Decl. of A. Whisnand, ¶ 5; see also Decl. of A. Whisnand, ¶ 12; Ex. G.)

4

> On November 27, 2015, Plaintiff sent a letter to counsel attempting to clarify the Supplemental Request for Production of Documents, but did not object to the darkened documents he had received. (Decl. of A. Whisnand, Ex. H [ECF No. 58-2 at 44].)
>
> Because the original documents no longer exist, counsel provided Plaintiff the best option available which was darkened copies of the originals, and counsel served the darkened copies within a month of receipt of Plaintiff's complaint. (Second Decl. of A. Whisnand, ¶¶ 2-5.) Defense counsel submits that after a diligent inquiry higher-quality documents simply do not exist, and Plaintiff's claim that high-quality scans of the original documents are maintained in CDCR's SOM database is incorrect. (Id. ¶ 6.) Defense counsel declares that he contacted SATF's litigation coordinator and asked where it stored electronic copies of the Ramadan documents that were produced and whether such documentation was stored in the "SOMS," or CDCR's strategic offender management system. (Id.) The litigation coordinator informed counsel that the documents he had provided came from computer systems in SATF's community resource management's office system, and not SOMS or the related "ERMS" system. (Id.) The litigation coordinator also advised counsel that SOMS and ERMS primarily contain documents related to inmate central files. (Id.)
>
> In addition, with regard to Plaintiff's argument that Defendants failed to provide "the requested MINUTES from the 2010, 2011, and 2012 committees[,]" defense counsel submits that Plaintiff was provided with all of the documents that the litigation coordinator at SATF could locate concerning Ramadan planning at SATF from 2006 to 2012. (Decl. of A. Whisnand, ¶ 4.) Absent evidence to the contrary, not present here, Plaintiff is required to accept defense counsel's representation that such documentation either does not exist or cannot be located, and Defendant cannot be compelled to provide copies of documents that do not exist. However, Defendant is advised of her duty to supplement disclosure if such documentation is discovered. Fed. R. Civ. P. 26(e)(1)(A). At this juncture, Defendant's representation that minutes from the 2010, 2011, and 2012 [meetings], either do not exist or could not [be] located must be accepted at face value, and Plaintiff's motion to compel a further response is DENIED.

(Order at 4-6, ECF No. 65.)

### C.   Plaintiff's Second Motion to Compel

In his second motion to compel, Plaintiff seeks to compel the production of additional "committee meetings minutes." (Mot. at 1, ECF No. 75.) Plaintiff contends that he submitted a notice of production to respond, dated March 31, 2016, alerting Defendants to the existence of copies of SATF's committee meetings minutes archived at CDCR headquarters, per Departmental Operations Manual (DOM) § 12050.9. Plaintiff also argues that Defendant Ojeda "quoted from the previously claimed non-existence not possessed by any defendant 2012 Ramadan committee meeting minutes."

1. <u>Discovery Since March 3, 2016, Regarding "Minutes"</u>

Defendants submit that since March 3, 2016, Plaintiff has continued to serve discovery requests concerning "minutes." Defendants and their counsel have explained to Plaintiff that they have already provided all of the minutes that they have located and that other documents do not exist. (Opp'n at 3, ECF No. 79.)

    **a.**    **Plaintiff's Second Discovery Request Regarding "Minutes" Directed to Defendant Etchebere**

Defendants submit that on April 13, 2016, they received Plaintiff's second set of requests for production of documents, directed at Defendant Etchebehere. (Decl. A. Whisnand, ¶ 3, Ex. A at Whisnand.004.) Plaintiff requested:

> Provide copies of the 2010, 2011, and 2012 SATF RAMADAN committee meetings MINUTES that were routed to CDCR headquarters, per D.O.M. § 12050.9 (…The LAD-PMU, Headquarters, maintains one copy of institutional staff meeting minutes.).

Defendants submit that "[w]here Plaintiff wrote 'D.O.M. § 12050.9,' he was referring to this section which concerns the taking and retaining of minutes for certain types of meetings at CDCR institutions. (<u>Id.</u> at ¶¶ 5, 8-9.)

Defendants presented Plaintiff's request to SATF's Litigation Coordinator who informed counsel that if any "minutes" existed, they would not have been forwarded to CDCR headquarters, because section 12050.9 would not apply to meetings concerning religious events. (<u>Id.</u> at ¶¶ 8-9.) The Litigation Coordinator reiterated to defense counsel that SATF had provided all of the relevant documents he could locate regarding Ramadan planning at SATF. (<u>Id.</u> at ¶ 8.)

On May 25, 2016, Defendant Etchebehere served her "Responses to Plaintiff's Requests for Production of Documents – Set Two." (Decl. A. Whisnand, ¶ 12, Ex. C at Whisnand.025-029.) With regard to Plaintiff's request for "copies of the 2010, 2011, 2012 SATF RAMADAN committee meetings MINUTES" that were routed to CDCR headquarters, Defendant responded, in relevant part, as follows:

> Defendant further objects to this request on the grounds that it is not brought in good faith, causes harassment and unnecessary delay, and needlessly increases the costs of litigation. Fed. R. Civ. P. 26(g)(1)(B)(ii). This issue of whether Defendant or SATF possesses additional

6

> committee meetings "minutes" concerning Ramadan planning from 2010 through 2012 has already been decided by the Court: Plaintiff filed a motion to compel on this very issue (ECF No. 55), which was denied. (ECF No. 65.) As the Court made clear: "[W]ith regard to Plaintiff's argument that Defendants failed to provide 'the requested MINUTES from the 2010, 2011, and 2012 committee[s]," defense counsel submits that Plaintiff was provided with all of the documents that the litigation coordinator at SATF could locate concerning Ramadan planning at SATF from 2006 to 2012 . . . "Absent evidence to the contrary, not present here, Plaintiff is required to accept defense counsel's representation that such documentation either does not exist or cannot be located, and Defendant cannot be compelled to provide copies of documents that do not exist." (ECF No. 65 at 6.)

(Id. at Ex. C, Whisnand.027.)

Defendant Etchebehere further stated that she "remains unable to locate any additional Ramadan committee 'minutes,'" that she "has provided all of the documents that SATF could locate," and that she "will supplement her responses if and when additional documents are located." (Id.)

### b.  Plaintiff's Additional Discovery Requests, Including First Set of Interrogatories Directed to Defendant Ojeda

Defendants submit that on or about June 1, 2016, Defendants received additional discovery requests, including Plaintiff's first set of interrogatories to Defendant Ojeda. (Decl. A. Whisnand, ¶ 15, Ex. D at Whisnand.034-035.) Interrogatory No. 5, in relevant part, asked Defendant Ojeda to describe "the basis for the change in the procedure for enrollment in the SATF Ramadan Fasting program[] that is the subject of this litigation." (Id. at Ex. D, Whisnand.035.) Defendant Ojeda responded: "According to the June 2012, Ramadan meeting minutes, the policy was adopted in part because in prior years 'officers were calling in at the last minute to add names to the [Ramadan] list,' causing an administrative burden on staff." (Id. at ¶ 19, Ex. E at Whisnand.055.)

Where Ojeda referred to "minutes" in his Response to Interrogatory No. 6," he was quoting from the June 18, 2012, document, "Ramadan Meeting." (Decl. A. Whisnand, ¶ 20.) Defendants submit that prior to Defendant Ojeda's appearance in this case, defense counsel and Defendant Etchebehere were under the impression that the "Ramadan Meeting" document was not "minutes." (Id.) Defendant Ojeda clarified to counsel, however, that the document entitled "Ramadan Meeting" was, in fact, minutes from a meeting that took place on June 18, 2012. (Id.) Nonetheless, Plaintiff

received the "Ramadan Meeting" document in October 2015. (Decl. A. Whisnand, ¶ 19, Ex. E at Whisnand.055.)

### c. Plaintiff's Third Request Regarding "Minutes"

On August 17, 2016, Defendants received another set of discovery requests, including Plaintiff's second set of interrogatories for Defendant Ojeda. (Decl. A. Whisnand, ¶ 23, Ex. G at Whisnand.385.) Plaintiff presented several interrogatories regarding "minutes," including:

"Please identify all documents that are likely to contain … [t]he record of attendance for the 2009, 2010, 2011, and 2012 Substance Abuse Treatment Facility (SATF) committee meetings …."

"PLEASE IDENTIFY THE LOCATION OF WHERE THESE MINUTES ARE STORED."

"PLEASE IDENTIFY THE CUSTODIAL OF THESE MINUTES."

(Decl. A. Whisnand, ¶ 24, Ex. G at Whisnand.385.)

On August 24, 2016, defense counsel called Plaintiff to discuss the discovery requests. (Decl. A. Whisnand, ¶ 25.) Defense counsel advised Plaintiff that Defendants had produced all of the documents that they and SATF could locate regarding Ramadan planning at SATF. (Id.) Counsel further advised that the "minutes" Defendant Ojeda referenced was the June 18, 2012, "Ramadan Meeting" document produced to Plaintiff in October 2015. (Id.) Counsel explained that he and Defendant Etchebehere did not initially realize the document was indeed "minutes" until Defendant Ojeda clarified the issue. (Id.) Counsel submits that Plaintiff informed him he understood that the June 18, 2012, document was the only "minutes" Defendants could locate to date. (Id.)

On September 14, 2016, Defendants served their responses to Plaintiff's August 17, 2016 discovery requests. (Decl. A. Whisnand, ¶ 26, Ex. I at Whisnand.392-402.) With regard to Plaintiff's interrogatory request to "identify all documents that are likely to contain … [t]he record of attendance for the 2009, 2010, 2011, and 2012 … committee meetings," Defendant Ojeda responded, in relevant part, as follows:

> Defendants further object to this interrogatory on the ground that it seeks information that is equally available to Plaintiff. Defendants have already produced all of minutes that SATF could locate regarding Ramadan planning from 2009 through 2012.
>
> . . .

>Defendants further object to this interrogatory on the ground that it is not brought in good faith, causes harassment and unnecessary delay, and needlessly increases the cost of litigation. Fed. R. Civ. P. 26(g)(1)(B)(ii). Defendants have indicated, on multiple occasions, that they have located all of the documents they could find regarding Ramadan planning at SATF from 2009 through 2012—including, most recently, over three-hundred pages of e-mails and attachments from CDCR archives.
>
>Moreover, the Court has already determined the issue of whether Defendants or SATF possess additional committee meeting "minutes" concerning Ramadan planning at SATF: …
>
>To the extent that Plaintiff continues to seek "minutes," agendas, memoranda or similar documents concerning Ramadan planning at SATF from 2009 through 2012, Defendants will move for a protective order under Federal Rule of Civil Procedure 26(c) and sanctions under Federal Rule of Civil Procedure 37(a)(5).
>
>Subject to, and without waiving, these objections, Defendant responds as follows: to the best of Defendants' knowledge, the June 18, 2012, "Ramadan Meeting" minutes, which Defendants have already provided to Plaintiff, is the only document that contains a "record of attendance" for any meeting at SATF held between 2009 and 2012 regarding "Inmate Fasting Programs."

(Decl. A. Whisnand, Ex. I at Whisnand.394-395.)

### d. Plaintiff's Deposition—November 3, 2016

Defendants took Plaintiff's deposition on November 3, 2016. (Decl. A. Whisnand, § 28.) At the deposition, Plaintiff and defense counsel discussed Plaintiff's instant motion to compel on the record.

Counsel asked Plaintiff to state the grounds in support of his motion to compel, and Plaintiff responded that Defendants had not "produced the minutes to the meetings," and that "per CDCR policy, these meetings are supposed to be documented…." (Decl. A. Whisnand, Ex. K at Whisnand.413 [Pl.'s Dep., 137:2-21].) Counsel explained to Plaintiff that Defendants had produced all of the Ramadan committee minutes they could locate, and asked Plaintiff to explain why he believed the responses were not sufficient. (Id. at 137:22-138:18, 138:12-139:1.) Plaintiff responded that "we haven't been provided any minutes for any meetings." (Id. at 138:12-139:1.) After further discussion, Plaintiff submitted that had Defendants "look[ed] a little bit harder" they may "find minutes from 2011…." (Id. at 142:23-143:13.)

2. Plaintiff's Second Motion to Compel Shall be Denied

As previously stated, Plaintiff seeks to compel the production of additional "committee meetings minutes." (Mot. at 1, ECF No. 75.) Plaintiff contends that he submitted a notice of production to respond, dated March 31, 2016, alerting Defendants to the existence of copies of SATF's committee meetings minutes being archived at CDCR headquarters, per Departmental Operations Manual (DOM) § 12050.9. Plaintiff also argues that Defendant Ojeda "quoted from the previously claimed non-existence not possessed by any defendant 2012 Ramadan committee meeting minutes."

There is no basis to support Plaintiff's motion to compel a further response from Defendants. As explained above in detail, Defendants have on numerous occasions advised Plaintiff that they have produced any and all documents that they can locate to date regarding Ramadan planning at SATF. Moreover, on August 24, 2016, defense counsel called Plaintiff to reiterate that SATF had no reason to believe that any other "minutes" existed. (Decl. A. Whisnand, ¶ 25.) Counsel submits that Plaintiff indicated that he understood that the June 18, 2012, document, "Ramadan Meeting" was the only "minutes" that Defendants or SATF could locate, and Plaintiff submits no evidence to the contrary. Plaintiff provides no support for his claim that the alleged "minutes" were "archived at CDCR headquarters," and Plaintiff's reference to the DOM section does not mention archiving minutes for meetings concerning religious events. (Decl. A. Whisnand, ¶¶ 5, 8-9, Ex. B at Whisnand.009.) Because Defendants have produced all of the "minutes" that they or SATF can locate concerning Ramadan and have indicated that a supplemental response will be provided if and when additional documentation is located, Plaintiff's motion to compel must be denied. As stated in the Court's March 3, 2016, denying Plaintiff's first motion to compel, "[a]bsent evidence to the contrary, not present here, Plaintiff is required to accept defense counsel's representation that such documentation either does not exist or cannot be located, and Defendant cannot be compelled to provide copies of documents that do not exist." (Order at 6, ECF No. 65.) Accordingly, Plaintiff's second motion to compel is denied.

///

///

### D.  Defendants' Request for Reasonable Expenses

Defendants request that an award of reasonable expenses in the amount of $3,740, be imposed for opposing Plaintiff's motion.

If a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5). Plaintiff's pro se status does not insulate him from sanctions for failure to respond to discovery.  See Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994) (a court cannot decline to impose sanctions simply because a plaintiff is proceeding pro se); Sanchez v. Rodriguez, 298 F.R.D. 460, 470 (C.D. Cal. 2014) (pro se status "does not excuse intentional noncompliance with discovery rules.").  The Court must not order payment if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

The Court finds that it must award the reasonable expenses incurred in responding to Plaintiff's second motion to compel.  As previously stated, this is the second time that Plaintiff has moved to compel the production of "minutes" from Ramadan meetings at SATF from 2010 through 2012. Plaintiff's first motion to compel was denied, and the Court specifically noted that Plaintiff "is required to accept defense counsel's representation that such documentation either does not exist or cannot be located, and Defendant cannot be compelled to provide copies of documents that do not exist." (Order at 6, ECF No. 65.)  Defendants, through counsel, have advised Plaintiff is unequivocal terms on at least five occasions that they have already produced all of the responsive documents that either they or SATF could locate.  (See Decl. A. Whisnand, Ex. C at Whisnand.014; id. at Ex. C, Whisnand.026-27; id. at ¶ 18; id. at ¶ 24; id. at Ex. I, Whisnand.394-395.)  Although Plaintiff contends that he believes Defendants are withholding documentation from disclosure, there is no evidence to support Plaintiff's claim and the simple fact that certain documents do not exist, does not mean that Defendants are withholding responsive documents.  Simply stated, Defendants have been more than cooperative throughout the discovery process.  Indeed, counsel declares that when Plaintiff requested

1   production of emails—sent or received by all eight Defendants spanning a period of three years—
2   defense counsel and his staff went through over 1,400 archived e-mails and attachments to locate
3   responsive documents.

4   Defense counsel declares that he has billed at least twenty-two (22) hours ($3,740) opposing
5   Plaintiff's motion to compel. (Decl. A. Whisnand, ¶ 33.) Counsel declares that "[t]his is a
6   conservative figure, and includes time spent: organizing all of the discovery requests and responses
7   between the parties from March 3, 2016, to date; assembling those requests and responses into
8   chronological exhibits; drafting this declaration; drafting the memorandum of points and authorities;
9   asking Plaintiff questions regarding the motion to compel during his deposition; reviewing Plaintiff's
10  deposition transcript; and calculating the amount of hours that have been billed to this case." (Id.)
11  The Attorney General bills counsel's time at an hourly rate of $170, in quarter hour increments.

12  Given that Plaintiff was not substantially justified in bringing the instant motion to compel, see
13  Daniel v. Heise, No. C15-1247-JCC-MAT, 2016 WL 164305, at *2 (W.D. Wash. Jan. 14, 2016), the
14  Court finds that reasonable expenses of attorneys' fees in the amount of $3,740 should be assessed
15  against Plaintiff. However, given that Plaintiff is proceeding in forma pauperis in this action and the
16  Ninth Circuit has held that it is an abuse of discretion to order a sanction which cannot be performed,
17  the Court will stay enforcement of the fee assessment. Thomas v. Gerber Prod., 703 F.2d 353, 357
18  (9th Cir. 1983).

19  **E.   Defendants' Request for Protective Order**

20  Defendants also request that the Court issue a protective order shielding them from any further
21  discovery or motions to compel.

22  Defendants submit that recently "Plaintiff's correspondence suggests that he is propounding
23  discovery to harass Defendants or to drive up the costs of their defense." Defendants reference a
24  meet-and-confer letter dated October 5, 2016, in which Plaintiff stated: "I realize this is getting very
25  difficult legally for the defendants and their counsel. But your choices brought us here. There are
26  consequences for all acts." (Dec. A. Whisnand, ¶ 27, Ex J. at Whisnand.404.)

27  The Court finds that the necessity for a protective order to be moot given that the deadline for
28  completion of all discovery, including motions to compel expired over a month ago on November 30,

2016. (ECF No. 67.) Accordingly, Defendants' request for protective order shall be denied, without prejudice.

## III.
## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's second motion to compel, filed October 14, 2016 is denied;
2. Defendants' request for reasonable expenses in the amount of $3,740 is GRANTED;
3. The order assessing reasonable expenses in the amount of $3,740 is stayed; and
4. Defendants' request for a protective order is denied, without prejudice.

IT IS SO ORDERED.

Dated: **January 12, 2017**

UNITED STATES MAGISTRATE JUDGE